1   Xavier Becerra, State Bar No. 118517
    Attorney General of California
2   Catherine Woodbridge, State Bar No. 186186
    Supervising Deputy Attorney General
3   Amie C. McTavish, State Bar No. 242372
    Deputy Attorney General
4     1300 I Street, Suite 125
      P.O. Box 944255
5     Sacramento, CA 94244-2550
      Telephone:  (916) 210-7663
6     Fax:  (916) 322-8288
      E-mail:  Amie.McTavish@doj.ca.gov
7   *Attorneys for Defendants State of California,*
    *California Highway Patrol, CHP Lieutenant Todd*
8   *Brown, CHP Sergeant Reggie Whitehead, and CHP*
    *Chief  Brent Newman*

9                   IN THE UNITED STATES DISTRICT COURT

10                  FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12

| | |
|---|---|
| 13  **PHILIP DEBEAUBIEN,** | Case No. _____ |
| 14                          Plaintiff, | |
| 15        v. | **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. 1441 (a) (FEDERAL QUESTIONS JURISDICTION)** |
| 16 | |
| 17  **STATE OF CALIFORNIA; CALIFORNIA HIGHWAY PATROL; CHP** | Complaint Filed:      5/29/2019 |
| 18  **LIEUTENANT TODD BROWN; CHP SERGEANT REGGIE WHITEHEAD;** | |
| 19  **CHP CHIEF BRENT NEWMAN; and DOES 1 through 25, inclusive,** | (SACRAMENTO COUNTY SUPERIOR COURT CASE 34-2019-00257861-CU-CR-GDS) |
| 20                          Defendants. | |
| 21 | |

22   TO THE CLERK OF THE ABOVE ENTITLED COURT:

23        PLEASE TAKE NOTICE  that pursuant to 28 U.S.C. Sections 1331, 1441, and 1446,

24   Defendants State of California, California Highway Patrol, CHP Lieutenant Todd Brown, CHP

25   Sergeant Reggie Whitehead, and CHP Chief  Brent Newman hereby remove the above-captioned

26   action from the Superior Court of the State of California, Sacramento County, to the United States

27   District Court for the Eastern District of California.

28   ///

                                             1

**THE REMOVED ACTION**

1.      On or about May 29, 2019 the removed civil action entitled *Philip Debeaubien v. The State of California, The California Highway Patrol, CHP Lieutenant Todd Brown, CHP Sergeant Reggie Whitehead, CHP Chief  Brent Newman and Does 1 through 25 inclusive* was commenced in the Superior Court of the State of California, Sacramento County. Copies of the Summons, Complaint and Civil Case Cover Sheet are attached hereto as Exhibit A.

2.      The Complaint alleges the following: on September 3, 2018 now deceased off duty CHP Officer Brad Wheat shot and killed himself and his estranged wife, Mary Wheat and severely wounded Plaintiff Debeaubien. Plaintiff claims that although Wheat was off duty and not acting under color of law, defendants are responsible for Wheat's conduct.  Plaintiff sues the CHP, and its officers under, inter alia, 42 U.S.C. § 1983. Plaintiff also alleges state tort claims based on the same nucleus of facts.

**REMOVAL IS TIMELY**

3.      On June 13, 2019 Plaintiff served the Complaint upon the State of California. On June 18, 2019 Plaintiff served the Complaint upon Chief Newman.  On June 18, 2019 Plaintiff served the Complaint upon Lt. Brown, Sgt. Whitehead, and CHP. This Notice of Removal is timely under 28 U.S.C. § 1446(b)(1).

**GROUNDS FOR REMOVAL: FEDERAL QUESTION JURISDICTION**

4.      This Court has original jurisdiction over this action because it arises under the Constitution and laws of the United States.  28 U.S.C. § 1331.  The Complaint asserts a cause of action under 42 U.S.C. § 1983, and seeks redress under the Constitution and the laws of the United States.  Removal, therefore, is permitted under 28 U.S.C. § 1441(a) based on federal question jurisdiction.

5.      This Court has supplemental jurisdiction over Plaintiff's state-law causes of action, because they are "so related to claims in the action" over which the Court has original jurisdiction "that they form part of the same case or controversy."  28 U.S.C. § 1367(a).

///

///

2

1

**VENUE**

2      6.      Venue is proper in this District because this District includes the Sacramento County

3   Superior Court, the forum in which the removed action was pending. In addition, Defendant is

4   located in this Judicial District and the alleged acts identified in the Complaint occurred within

5   this District. 28 USC Section 1391 (b).

6              **NOTICE TO ADVERSE PARTIES AND STATE COURT**

7      7.      Defendant will promptly file a Notice of this Removal with the Clerk of the

8   Sacramento Superior Court.

9         WHEREFORE, Defendants State of California, California Highway Patrol, CHP Lieutenant

10  Todd Brown, CHP Sergeant Reggie Whitehead, and CHP Chief  Brent Newman hereby petition

11  to remove this case from the Superior Court of Sacramento County, pursuant to 28 U.S.C. Section

12  1441(b), to the United States District Court for the Eastern District of California.

13  Dated:  July 15, 2019                          Respectfully Submitted,

14                                                 XAVIER BECERRA
                                                   Attorney General of California
15                                                 CATHERINE WOODBRIDGE
                                                   Supervising Deputy Attorney General
16
                                                   */s/ Amie McTavish*
17
18                                                 AMIE C. MCTAVISH
                                                   Deputy Attorney General
19                                                 *Attorneys for Defendants State of California,*
                                                   *California Highway Patrol, CHP Lieutenant*
20                                                 *Todd Brown, CHP Sergeant Reggie*
                                                   *Whitehead, and CHP Chief  Brent Newman*
21  SA2019103044
    13894771.docx

22

23

24

25

26

27

28

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. 1441 (a) (FEDERAL QUESTIONS JURISDICTION)

# EXHIBIT A

**LAW OFFICE OF STEWART KATZ**
STEWART KATZ, State Bar #127425
555 University Avenue, Suite 270
Sacramento, California 95825
Telephone: (916) 444-5678

Attorney for Plaintiff
Phillip Debeaubien



FILED/ENDORSED

MAY 29 2019

By: _____ K. Fay _____
Deputy Clerk

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SACRAMENTO

PHILIP DEBEAUBIEN,

        Plaintiff,

        vs.

STATE OF CALIFORNIA; CALIFORNIA
HIGHWAY PATROL; CHP
LIEUTENANT TODD BROWN; CHP
SERGEANT REGGIE WHITEHEAD;
CHP CHIEF BRENT NEWMAN; and
DOES 1 through 25, inclusive,

        Defendants.

_____/

NO. **34-2019-00257861**

**COMPLAINT FOR VIOLATION OF
CIVIL RIGHTS AND STATE LAW**

**(Unlimited Civil)**

(1) 42 U.S.C. section 1983 – Violation
of Substantive Due Process rights; (2) 42
U.S.C section 1983 – Ratification; (3)
Professional Negligence – Failure to
provide *Tarasoff* warning; (4)
Negligence – Violation of Mandatory
Duty; (5) Negligence – Special
Relationship doctrine; (6) Negligent
Entrustment of Firearm; (7) Negligence
– Failure to Supervise.

**JURY TRIAL DEMANDED**

Plaintiff complains and alleges as follows:

## I. INTRODUCTION

1.    This case arises from the shooting and attempted murder of Philip Debeaubien on Sept. 3, 2018, by now-deceased CHP Officer Brad Wheat (Hereinafter "Wheat"). Wheat killed himself in the same incident after fatally shooting his estranged wife, Mary Wheat (hereinafter "Mary"), and severely wounding Debeaubien. The shootings occurred in and in

1   front of Debeaubien's business, Get Ripped Nutrition, located at 11310 Prospect Drive, #20,

2   Jackson, California in Amador County.

3        2.    Although Wheat was off-duty and not acting under color of law, under the facts

4   of this case, defendants are both legally and morally responsible for Wheat's conduct. Wheat

5   shot Debeaubien with his department-issued firearm and department-issued hollow-point

6   ammunition.

7        3.    Before the shooting, Defendants had actual and constructive knowledge of

8   Wheat's homicidal inclinations toward Debeaubien. Defendants also had actual and

9   constructive knowledge of Wheat's mental imbalances, as before the shooting they had

10   taken away Wheat's firearm and placed him on limited duty.  Such knowledge was derived

11   from multiple sources including Brad Wheat's statements and writings, information obtained

12   by a CHP psychologist, other CHP officers, law enforcement agencies and citizens.

13        4.    Defendants also allowed Wheat to use his status as a CHP officer to access

14   confidential law enforcement databases and to obtain other information about Debeaubien so

15   that Wheat could hunt him down.

16        5.    Despite that knowledge, defendants never warned Debeaubien of the above threat

17   to his life.

18        6.    Inexplicably and unbeknownst to Debeaubien, days before the shooting, the CHP

19   defendants returned the murder weapon and ammunition used for the shooting to Wheat.

20        7.    Defendants never attempted to warn or alert either Mary or Debeaubian that they

21   had re-armed Wheat.

22        8.    Defendants consciously chose to not investigate responsibility for this incident,

23   preferring to avoid potential negative publicity rather than address defective policies and

24   procedures that could put other potential victims at risk from other unbalanced CHP officers.

25        9.    Debeaubien was shot in the left shoulder, causing significant structural, muscular

26   and neurological damage. Debeaubien also injured his knee and suffered severe emotional

27   trauma and injury as a result of the incident.  Debeaubien's injuries are of a permanent and

28   life-changing nature.

## II. VENUE/ JURISDICTION

10.     Venue is appropriate in Sacramento County Superior Court because the California Highway Patrol is a state agency based in Sacramento. Additionally, it is believed that several of the defendants worked out of the Valley Division Office in Sacramento.

## III. PARTIES

11.     During all times mentioned in this Complaint, plaintiff Philip Debeaubien was, and is, a United States citizen and is a resident of the County of Amador, California.

12.     Defendant State of California is a public entity within the definition of California Government Code § 811.2. Pursuant to California Government Code § 945, public entities are subject to suit. Defendant State of California operates and manages the California Highway Patrol.

13.     Defendant California Highway Patrol is a public entity within the definition of California Government Code § 811.2 and subject to suit under the Government Code.

14.     Defendant Todd Brown (hereinafter, "Brown") was employed by the California Highway Patrol as a lieutenant. At all relevant times he was acting in the course and scope of that employment and under color of state law. Brown is being sued in his individual capacity.

15.     Defendant Reggie Whitehead (hereinafter, "Whitehead") was employed by the California Highway Patrol as a sergeant. At all relevant times he was acting in the course and scope of that employment and under color of state law. Whitehead is being sued in his individual capacity.

16.     Defendant Brent Newman (hereinafter, "Newman") was employed by the California Highway patrol as a chief.  At all relevant times he was acting in the course and scope of that employment and under color of state law.  Newman is being sued in his individual capacity.

17.     The true name and identity of defendant Doe 1 is presently unknown to plaintiff. Defendant Doe 1 was the mental health professional who met with Wheat and assessed his mental state in connection with his firearm being taken away in August 2018. It is unknown

1 | at present whether Doe 1 is an employee of or contracts with the California Highway Patrol.

2 | Plaintiff will seek to amend this Complaint as soon as the true name and identity of

3 | defendant Doe 1 has been ascertained. At all relevant times Doe 1 was acting in the course

4 | and scope of his or her employment or agency with the CHP and under color of state law.

5 |     18.    The true names and identities of defendant Does 2 through 5 are presently

6 | unknown to plaintiff. Plaintiff alleges that each defendant Does 2 through 5 was also a

7 | mental health professional employed by or contracting with the California Highway Patrol

8 | and also was responsible for the assessment and CHP decision-making regarding Wheat's

9 | firearm status during all relevant times pled herein. Plaintiff will seek to amend this

10 | Complaint as soon as the true names and identities of defendant Does 2 through 5 have been

11 | ascertained. At all relevant times Does 2 through 5 were acting in the course and scope of

12 | their employment or agency with the CHP and under color of state law.

13 |     19.    The true names and identities of defendant Does 6 and 7 are presently unknown

14 | to plaintiff. Plaintiff alleges that each of defendant Does 6 and 7 is an assistant chief

15 | employed by the California Highway Patrol at the time of the conduct alleged and was

16 | responsible for the supervision of the Amador County Office, and was responsible for the

17 | training supervision, discipline and retention of Wheat. Plaintiff will seek to amend this

18 | Complaint as soon as the true names and identities of defendant Does 6 and 7 have been

19 | ascertained.

20 |     20.    The true names and identities of defendant Does 8 through 10 are presently

21 | unknown to plaintiff. Plaintiff alleges that each of defendant Does 8 through 10 was a

22 | supervisor employed by the California Highway Patrol at the time of the conduct alleged

23 | and was individually responsible for the training, supervision, discipline and retention of

24 | CHP officers, including Wheat. Plaintiff asserts that the failure to properly train, supervise,

25 | discipline and retain Wheat was a cause in fact of the injuries alleged herein. Plaintiff will

26 | seek to amend this Complaint as soon as the true names and identities of defendant Does 8

27 | through 10 have been ascertained.

28 |     21.    The true names and identities of defendant Does 11 through 15 are presently

1  unknown to plaintiff. Plaintiff alleges that each of defendant Does 11 through 15 was

2  employed by the California Highway Patrol at the time of the conduct alleged and was

3  responsible for the promulgation of the customs, policies and practices which caused the

4  acts alleged herein and which resulted in plaintiff's injuries. Plaintiff will seek to amend this

5  complaint as soon as the true names and identities of defendant Does 11 through 15 have

6  been ascertained.

7    22.    The true name and identity of defendant Doe 16 is presently unknown to plaintiff.

8  Plaintiff alleges that defendant Doe 16 was employed by the California Highway Patrol as

9  the Head of the Valley Division at the time of the conduct alleged and was responsible for

10  the supervision and training of Does 1 through 15 and promulgation of the customs, policies

11  and practices which caused the acts alleged herein and which resulted in plaintiff's injuries.

12  Plaintiff will seek to amend this Complaint as soon as the true name and identity of

13  defendant Doe 16 has been ascertained.

14    23.    The true names and identities of defendant Does 17 through 25 are presently

15  unknown to plaintiff. Plaintiff alleges that each of defendant Does 17 through 25 were other

16  California Highway Patrol officers, employees or agents whose conduct was responsible for

17  the acts alleged herein with resulted in plaintiff's injuries. Plaintiff will seek to amend this

18  Complaint as soon as the true names and identities of defendant Does 17 through 25 have

19  been ascertained.

20    24.    Each of the Does identified above acted in the course and scope of employment

21  or agency with the CHP and under color of state law.

22    **IV. COMPLIANCE WITH GOVERNMENT TORT CLAIM PROCEDURES**

23    25.    Plaintiff filed a timely government tort claim with the Department of General

24  Services on Oct. 29, 2018, as a prerequisite to the state law claims alleged herein. They

25  rejected that claim in a letter dated Dec. 4, 2018, stating that the claim involved complex

26  issues beyond the scope of analysis and legal interpretation of the department and would

27  best be determined by the courts.

28  ///

### V.  FACTUAL ALLEGATIONS

#### Background Information

26.    Higher rates of domestic violence and suicide in law enforcement families are well documented. One study indicated domestic violence is two to four times more common among police families than the general population. The problem is compounded by the "code of silence" as well as by increased rates of alcoholism in law enforcement.

27.    Officers' possession of firearms, combined with the knowledge that their crimes likely won't be rigorously investigated, further serve to enable officer-involved domestic violence. Police agencies such as the California Highway Patrol are aware of the problem, or should be, but often attempt to hide it rather than take measures to address and ameliorate it.

28.    The CHP has inadequate policies to protect those at risk from domestic violence at the hands of their officers.

29.    The CHP inadequately addresses and investigates acts of domestic violence perpetrated by its sworn personnel and specifically fails to warn those at risk, and gives the perpetrators the tools to carry out and/or intimidate their victims of domestic violence.

30.    The CHP has inadequate safeguards regarding the misuse of confidential personal information in databases and, in particular, it fails to assess the predictable misuse of those databases by officers experiencing domestic upheaval.

31.    The CHP has a practice of discouraging local law enforcement agencies from aggressively pursuing acts of domestic violence perpetrated by its officers by falsely representing that they are or will be in the process of adequately addressing the problem internally.

32.    The CHP also has inadequate processes to ensure that law enforcement officers equipped with firearms are fit for duty and/or mentally fit and/or do not pose a risk to themselves and others, particularly with regard to likely domestic violence situations.

33.    In failing to take the requisite steps needed to prevent the domestic violence that occurred in this case, named and Doe supervisors were more concerned with avoiding

1  adverse attention directed at their officers and, therefore, themselves, than with the safety of
2  citizens, whom their by actions or lack thereof have placed at greater risk.

3      34.    There are many documented acts of criminal domestic violence by CHP Valley
4  Division Officers in counties including Sacramento, Placer, Yolo, El Dorado and Amador.

5                          **Pre-Shooting Information**

6      35.    Debeaubien was 44 years old at the time of the shooting. He owned a gym and
7  nutritional supplement store in Amador County and worked as a fitness trainer.  At the time
8  of the conduct alleged, Debeaubien was separated from his wife.

9      36.    Mary was Wheat's estranged wife who had separated from her husband and was
10 living with Debeaubien at the time of the incident.

11     37.    Wheat was openly distraught about the disintegration of his marriage. His work
12 performance was obviously suffering. He was unwilling to accept the fact that his marriage
13 had ended and blamed Debeaubien for the separation, although, in point of fact, the marriage
14 had been crumbling for several years.

15     38.    By July of 2018, Wheat was aware that Debeaubien and Wheat's estranged wife
16 were romantically involved. This angered Wheat, and he began stalking Debeaubien.
17 Debeaubien saw signs that someone was watching him and evidence of an attempt to break
18 into his home, which he attributed to Wheat. Wheat's stalking activities were assisted by his
19 illegal access of law enforcement databases. He was further assisted by his fellow officers.

20     39.    As of August 2, 2018, Mary was living with Debeaubien at a house owned by her
21 father in Garden Valley, California.  On that date, as Wheat was leaving his home he
22 encountered Mary's brother who was his next door neighbor.  Mary's brother spoke with
23 Wheat and learned that Wheat was armed, apparently intoxicated and heading to the Garden
24 Valley home for a potentially violent confrontation.  Concerned by this, Mary's brother
25 called 911, as well as his niece who warned Mary.  Wheat stormed into the Garden Valley
26 home, finding only his wife, who he accused of being a "whore", among other things, and
27 took her cellphone charger. Debeaubien was not at the Garden Valley house while Wheat
28

1    was there.  Wheat left the Garden Valley house before El Dorado County sheriff's deputies,

2    responding to the 911 call, arrived.

3    40.    The CHP and defendants Sergeant Whitehead and Lieutenant Brown became

4    aware of the August 2nd incident.  It is believed that on or about Aug. 4, 2018, Sergeant

5    Whitehead and Doe 1 (a department psychologist) met with Wheat for an assessment, which

6    found that he was unfit for patrol duty on the basis of his assaultive behavior and

7    uncontrolled anger toward his estranged wife and Debeaubien.

8    41.    As a result of the assessment, Wheat was initially suspended and then put on

9    desk duty and his service weapon was taken away. All of the aforementioned actions were

10    taken with the actual or constructive knowledge of Lieutenant Brown, Chief Newman and

11    the other Doe defendants.

12    42.    The only firearm which Wheat possessed was his CHP issued semi-automatic

13    handgun.

14    43.    Doe 1 never gave a *Tarasoff* warning to either plaintiff or Mary Wheat about the

15    bona fide threat that Brad Wheat presented to their safety.

16    44.    Not Lieutenant Brown, Sergeant Whitehead, Chief Newman nor any of the Doe

17    defendants contacted either Debeaubien or Mary for additional information necessary to

18    determine the extent of the risk posed by Wheat as an armed CHP officer.

19    45.    Despite the August 2nd domestic incident and the August 4th fit-for-duty

20    assessment, several days before the Sept. 3, 2018 shooting, defendants gave Wheat the

21    firearm and bullets used in the shooting.

22    46.    Defendants were motivated in part by their desire to avoid further bad publicity

23    because weeks earlier a CHP officer assigned to the same small CHP office was arrested for

24    child sexual abuse.    That arrest received extensive news coverage. They also were

25    improperly motivated to protect Brad Wheat because his father had been a patrol officer

26    assigned to the same office. Plaintiff learned considerably more about these events in the

27    aftermath than he knew at the time.

28

1    47.    In returning his firearm and bullets, defendants, including Does 1 through 5,

2    failed to properly assess Wheat's fitness for duty and/or mental capacity.

3    48.    No defendant notified either Debeaubien or Mary that the department had re-

4    armed Wheat.

5    49.    Debeaubien and Mary had previously learned that Wheat's department issued

6    firearm had been taken away from him and both knew that Wheat had no personal weapons.

7    Mary and Debeaubien's actions leading up to the shooting were premised on the belief

8    Wheat remained unarmed.

9    50.    After the August 2nd incident with Wheat, Debeaubien and Mary moved out of

10    the Garden Valley house.   On August 31, 2018, re-armed and re-activated to full duty,

11    Wheat broke two (2) windows at a house in Sutter Creek belonging to a friend of

12    Debeaubien where Debeaubian and Mary were staying.   Debeaubien and Mary were not

13    there at that time, as they were away for the Labor Day holiday.   On the next day, September

14    1, 2018, just two (2) days before the shooting, Wheat then broke all of the windows of that

15    house.   The owner of that house then reported these incidents to the Sutter Creek Police

16    Department.   That report identified Wheat as the likely perpetrator and as a CHP officer.

17    Upon information and belief, the Sutter Creek Police Department shared this information

18    with the California Highway Patrol.   Despite these new violent acts, CHP continued to allow

19    Wheat to have his firearm and operate under the mantel of his CHP officer status.

20    51.    Wheat had been texting and calling Mary for several days. Mary had not

21    responded to those entreaties.

22                                  **The Shooting**

23    52.    Monday, September 3, 2018, was Labor Day.   Debeaubien and Mary had

24    returned to Amador County, after being away for the weekend, and decided to stop at

25    Debeaubien's nutrition business at around 8:00 p.m. in Jackson, Amador County.

26    53.    At around 10:45 p.m., Wheat arrived at the business and, without announcing

27    himself, started banging on the back door. Although Debeaubien suspected that it might be

28    Wheat banging on the back door, he wasn't sure.

54.    As Debaubien and Mary saw Wheat pulling his car into the front parking lot, their fear was confirmed that it was Wheat who had been banging on the back door. Debaubien then called 911. At that point neither Debaubien nor Mary had an inkling that Wheat had been re-armed.

55.    Debeaubien had more than an inkling that Wheat had a weapon when, Wheat, who had parked and gotten out of his car, shot out the large, front window with his CHP semi-automatic pistol.

56.    Wheat entered Debeaubien's store through the shot-out window while brandishing the gun.

57.    Wheat chased Debeaubien around the store, shooting him through the shoulder, narrowly missing his aorta. Wheat took aim again, but his gun jammed. Despite his injuries, Debeaubien charged at Wheat, eventually forcing him to the ground and causing Wheat to drop the gun. Mary picked the gun up and ran outside. His hands slick with his own blood, Debeaubien lost his grip on Wheat, who got up and ran after Mary. Debeaubien yelled at her to shoot him, but she did not (or could not). Just after exiting the front window that Wheat had shot out, Debaubian heard the gunshots that ended Mary and Wheat's lives.

58.    The fatal shootings were recorded by cell phone video by an uninvolved third party who had been sleeping in his car near the business and had been awoken by the initial gunfire.    That video is in the possession of the Amador County Sheriff's Department.    The Amador County Sheriff's Department has made the video available to the CHP but not to plaintiff.

59.    The Amador County Sheriff's Department is also in possession of Wheat's personal journal which, upon information and belief, includes his homicidal inclinations. The Amador County Sheriff's Department has also made the journal available to the CHP.

### Breach of Legal Duties

60.    California law, including specifically Government Code section 1031, creates a duty by the defendants to take steps and put in place processes to ensure that the law enforcement officers they entrust with firearms are fit for duty and do not pose a risk to

1   themselves and others.  Defendants failed to take those steps and those failures led to
2   plaintiff's injury and damages.

3       61.    California law and federal civil rights law creates a duty by the defendants to
4   take steps and action to prevent harm when defendants have caused a situation that could
5   lead to an individual's harm.  Defendants created such a dangerous condition/special
6   relationship in this case and failed to take steps and action which led to plaintiff's injury and
7   damages.

8       62.    Defendants had knowledge that Brad Wheat wished to seriously harm
9   Debeaubien and Mary and that he was mentally unfit to carry a firearm.  Instead of taking
10  steps to prevent that harm and ensure compliance with the law, Defendants entrusted Brad
11  Wheat with the firearm and ammunition (hollow point – which are designed to inflict greater
12  injury and damage) he used to kill Mary and seriously injure Debeaubien.

13      63.    Defendants have also failed to investigate and/or review the evidence in this case
14  (including Wheat's journal and cell phone video) for either the purpose of undertaking
15  appropriate discipline or instituting changes in policy, training and practices to lessen the
16  likelihood of a similar tragedy re-occurring.

17                                      **Damages**

18      64.    Debeaubien was shot in the left shoulder, causing significant structural, muscular
19  and neurological damage. The injuries were complicated by the multiple fragments
20  produced by the hollow point round which struck him. As a result, plaintiff had two (2)
21  surgeries on his shoulder and has been informed that he may need a shoulder replacement.
22  He is still receiving physical therapy for the shoulder injury.

23      65.    Debeaubien also injured his right knee in attempting to fend off Wheat's attack,
24  suffering a torn meniscus which was surgically repaired.

25      66.    Debaubien sustained permanent nerve damage from the gun shot.

26      67.    As would be expected, Debeaubien also suffered emotional distress as a result of
27  the incident and is undergoing continuing counseling for post-traumatic stress disorder.

28      68.    Debaubien was never emotionally able to re-open the now closed nutrition store.

69. Debeaubien's injuries are of a permanent and life-changing nature. Debeaubien's damages include pain and suffering, nerve damage, loss of movement, internal injuries, medical bills and costs, loss of enjoyment of life, lost employment opportunities and emotional distress.

70. It is believed that the cost of Debeaubian's medical treatment thus far is in excess of half a million dollars.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Individual Liability/Violation of Substantive Due Process Rights**
**(Actionable under 42 U.S.C. §1983)**
*(Against Defendants Brown, Whitehead and Does 1 through 5 and 17 through 25)*

71. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 70, as though fully set forth herein.

72. The aforementioned acts of defendants CHP Lieutenant Brown and Sergeant Whitehead and Does 1-5 and 17-25, as alleged herein, including, but not limited to, defendants providing Wheat with the instrumentalities to carry out his attack of plaintiff and Mary and allowing Wheat to continue to function under the protections of being a law enforcement officer created a danger that would not have existed without defendants affirmative acts.

73. In engaging in said acts, defendants acted with deliberate indifference to the foreseeable harm and danger plaintiff would face and with deliberate indifference to plaintiff's constitutional rights, including, his right to substantive due process as protected by the Fourteenth Amendment of the United States Constitution.

74. As a direct and proximate result of the aforementioned actions of defendants, plaintiff suffered injuries and damages as alleged herein.

75. The aforementioned acts and/or omissions of said defendants were willful, intentional, wanton, reckless and/or accomplished with a conscious disregard of plaintiff's rights entitling plaintiff to an award of punitive damages against the individual defendants.

**SECOND CAUSE OF ACTION**
**Individual Liability/Ratification**
**(Actionable under 42 U.S.C. §1983)**
*(Against Defendants Newman, Brown, Whitehead and Does 6 through 16)*

76.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 75, as though fully set forth herein.

77.    The aforementioned acts of defendants Newman, Brown, Whitehead and Does 6-16 as alleged herein, including but not limited to failing to investigate the shooting and by failing to promulgate policies and establish practices to prevent and deal with domestic violence and other related abuses by law enforcement personnel as alleged herein, constituted ratification of the violation of Debeaubien's constitutional rights.

78.    The inaction of said defendants was a direct and proximate cause of the injuries suffered by plaintiff.

79.    The aforementioned acts and/or omissions of said defendants were willful, intentional, wanton, reckless and/or accomplished with a conscious disregard of plaintiff's rights entitling plaintiff to an award of punitive damages against the individual, non-entity defendants.

**THIRD CAUSE OF ACTION**
**Professional Negligence – Failure to provide *Tarasoff* Warning**
**(Actionable under Government Code section 815.2 et seq.)**
*(Against Defendants State of California, CHP and Does 1-5)*

80.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 79, as though fully set forth herein.

81.    As professional mental health providers defendants Does 1 through 5 owed plaintiff a duty of care, specifically to warn him if they knew that Wheat posed a serious danger of violence towards plaintiff.

82.    On or about August 4, 2018 and at all times relevant said Defendants knew that Wheat posed a serious danger of violence towards plaintiff.

83.    Defendants breached the duty of care owed to plaintiff in that defendants provided no warnings, at all times relevant, to plaintiff despite Wheat's violent actions and intentions toward plaintiff.

84.    Said breach led to plaintiff being attacked and shot by Wheat and proximately caused the injuries and damages alleged herein.

85.    Defendants State of California and California Highway Patrol are liable for the conduct of Does 1 through 5 as each was acting under color of law and under the course and scope of their employment or agency with Defendant CHP.

### FOURTH CAUSE OF ACTION
**Negligence – Violation of Mandatory Duty**
**(Actionable under Government Code section 815.6 et seq.)**
*(Against Defendants State of California, CHP and Does 11-16)*

86.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 85, as though fully set forth herein.

87.    Defendants State of California and CHP, through their agents and employees, and Does 11-16 owed plaintiff and the general public a duty of care to ensure that its law enforcement personnel are mentally and physically fit to exercise police power and carry a firearm pursuant to California law including but not limited to Government Code section 1031(f) which states that a peace officer shall, at a minimum, "[b]e found to be free from any physical, emotional, or mental condition that might adversely affect the exercise of the powers of a police officer."

88.    This duty is intended to prevent the employment and/or continued employment of individuals as law enforcement personnel who are mentally unstable and pose a risk of harm to members of the general public.

89.    Defendants breached the duty of care owed to plaintiff by engaging in the acts and/or omissions alleged above, including but not limited to, providing Wheat when he was mentally unstable and violent with a firearm and ammunition days prior to the shooting, and providing no warnings to plaintiff despite Wheat's known violent actions and intentions toward plaintiff.  Defendants also failed to promulgate policies and establish practices to

1    ensure compliance with the Government Code and deal with domestic violence and other

2    related abuses by law enforcement personnel as alleged herein.

3    90.    Said breach led to plaintiff being attacked and shot by Brad Wheat and

4    proximately caused the injuries and damages alleged herein.

5    ### FIFTH CAUSE OF ACTION

6    **Negligence – Special Relationship**
     **(Actionable under Government section 815.2 et seq.)**

7    *(Against Defendants State of California, CHP, Brown, Whitehead and Does 17 through 25)*

8    91.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 90, as

9    though fully set forth herein.

10    92.    The aforementioned acts of defendants CHP Lieutenant Brown and CHP

11    Sergeant Whitehead and Does 17-25, as alleged herein, including, but not limited to,

12    defendants providing Wheat with the instrumentalities to carry out his attack of plaintiff and

13    Mary and allowing Wheat to continue to function under the protections of being a law

14    enforcement officer, created a danger that would not have existed without defendants'

15    affirmative acts.

16    93.    In engaging in said acts, defendants owed plaintiff a duty of care arising out of

17    the special relationship they created.

18    94.    Defendants breached said duty. As a direct and proximate result of said breach,

19    plaintiff suffered injuries and damages as alleged herein.

20    95.    Defendants State of California and CHP are liable for the conduct of defendants

21    Brown, Whitehead and Does 17 through 25 as each was acting under color of law and within

22    the course and scope of their employment or agency with Defendant CHP.

23    ### SIXTH CAUSE OF ACTION

24    **Negligent Entrustment of Firearm**
     **(Actionable under Government section 815.2 et seq.)**

25    *(Against Defendants State of California, CHP, Brown, Whitehead and*
     *Does 1 through 5 and 17 through 25)*

26    96.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 95, as

27    though fully set forth herein.

28

97.    Defendants owed plaintiff a duty of care to not entrust or provide a firearm to an individual who was going to cause injury or death with the firearm.

98.    The aforementioned acts of defendants CHP Lieutenant Brown, CHP Sergeant Whitehead and Does 1-5 and 17-25, as alleged herein, including, but not limited to, providing Wheat, when he was mentally unstable and violent, with a firearm and ammunition days prior to the shooting, and providing no warnings to plaintiff despite Wheat's known violent actions and intentions toward plaintiff, breached said duty.

99.    As a direct and proximate result said breach, plaintiff suffered injuries and damages as alleged herein.

100.    Defendants State of California and CHP are liable for the conduct of defendants Brown, Whitehead and Does 1 through 5 and 17 through 25 as each was acting under color of law and under the course and scope of their employment or agency with Defendant CHP.

## SEVENTH CAUSE OF ACTION
### Negligent Supervision
### (Actionable under Government section 815.2)
*(Against Defendants Newman, Brown, Whitehead and Does 6 through 10)*

101.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 100, as though fully set forth herein.

102.    Defendants owed plaintiff a duty of care to supervise law enforcement personnel in such a manner to comply with the law and ensure that the act and/or omissions alleged herein did not occur.

103.    The aforementioned acts of defendants CHP Chief Newman, CHP Lieutenant Brown, CHP Sergeant Whitehead and Does 6-10, as alleged herein, including, but not limited to, failing to supervise, investigate and discipline Wheat and failing to supervise other Does to ensure compliance with the law and prevent domestic violence incidents by law enforcement personnel, breached the owed duty of care.

104.    As a direct and proximate result said breach, plaintiff suffered injuries and damages as alleged herein.

1    105.    Defendants State of California and CHP are liable for the conduct of defendants

2    Newman, Brown, Whitehead and Does 6 through 10 as each was acting under color of law

3    and under the course and scope of their employment or agency with Defendant CHP.

### VII. PRAYER FOR RELIEF

5    Wherefore, plaintiff prays for the following relief:

6    1.    For compensatory, general and special damages against each defendant, jointly

7    and severally, in the amount proven at trial;

8    2.    For punitive and exemplary damages against each individual, non-entity

9    defendant in an amount appropriate to punish defendants and deter others from engaging in

10   similar misconduct;

11   3.    For costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and

12   as otherwise authorized by statute or law;

13   4.    For such other relief, including injunctive and/or declaratory relief, as the Court

14   may deem proper.

16   Dated:  May 29, 2019                          Respectfully submitted,

                                                 Stewart Katz,
                                                 Attorney for Plaintiff

### DEMAND FOR TRIAL BY JURY

23   Plaintiff Philip Debeaubien hereby demands trial by jury.

25   Dated:  May 29, 2019

                                                 Stewart Katz,
                                                 Attorney for Plaintiff

Debeaubien - Complaint for Damages          17

RECEIVED ☺
IN DROP BOX

2019 MAY 29  AM 10: 44

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Additional Parties Attachment form is attached.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

PHILIP DEBEAUBIEN



FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

FILED/ENDORSED

MAY 29 2019

By: _____ K. Fav
Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

Superior Court of California, Sacramento County
720 Ninth Street, Sacramento, CA 95814

CASE NUMBER:
*(Número del Caso):*
34-2019-00257861

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Law Office of Stewart Katz, 555 University Ave., #270, Sacramento, CA 95825, (916) 444-5678

DATE: **MAY 29 2019**          Clerk, by _____, Deputy
*(Fecha)*                       *(Secretario)*                       *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
       ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

SUM-200(A)

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Philip Debeaubien vs. State of California, et al. | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

STATE OF CALIFORNIA; CALIFORNIA HIGHWAY PATROL; CHP LIEUTENANT TODD BROWN; CHP SERGEANT REGGIE WHITEHEAD; CHP CHIEF BRENT NEWMAN; and DOES 1 through 25, inclusive

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Stewart Katz (SBN 127425)
Law Office of Stewart Katz
555 University Avenue, Suite 270
Sacramento, CA 95825
TELEPHONE NO.: (916) 444-5678    FAX NO.:
ATTORNEY FOR (Name): Philip Debeaubien, Plaintiff

**FILED/ENDORSED**

**MAY 29 2019**

By: ___K. Fay___
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Sacramento
STREET ADDRESS: 720 Ninth Street
MAILING ADDRESS:
CITY AND ZIP CODE: Sacramento, CA 95814
BRANCH NAME:

CASE NAME:
Philip Debeaubien vs. State of California, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER |
|---|---|---|
| [✓] Unlimited  [ ] Limited | [ ] Counter  [ ] Joinder | 34-2019-00257861 |
| (Amount demanded exceeds $25,000) (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[✓] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a.[✓] monetary  b.[ ] nonmonetary; declaratory or injunctive relief  c.[✓] punitive
4. Number of causes of action (specify): 7
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: May 29, 2019
Stewart Katz
_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.
www.FormsWorkflow.com

# CERTIFICATE OF SERVICE

Case Name:   **Debeaubien vs. State of California**    No. _____

I hereby certify that on <u>July 15, 2019</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. 1441 (a) (FEDERAL QUESTIONS JURISDICTION)**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users. On <u>July 15, 2019</u>, I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

Stewart Katz
Attorney at Law
Law Offices of Stewart Katz
555 University Ave, Suite 270
Sacramento, CA 95825

*Counsel for Plaintiff*

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>July 15, 2019</u>, at Sacramento, California.

| Jenelle R. Joyce | */s/ Jenelle R. Joyce* |
|:---:|:---:|
| Declarant | Signature |

SA2019103044
13915162.docx