1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12   PHILIP DEBEAUBIEN,                No. 2:19-cv-01329-WBS-DB

13                 Plaintiff,

14        v.                          ORDER DENYING DEFENDANTS'
                                      MOTION TO MODIFY THE
15   STATE OF CALIFORNIA, CALIFORNIA  SCHEDULING ORDER AND EX PARTE
     HIGHWAY PATROL, TODD BROWN,      APPLICATIONS TO EXTEND OR
16   SABRENA SWAIN, JOY GRAF, REGGIE  STAY EXPERT DISCLOSURE
     WHITEHEAD, RYAN STONEBRAKER,     DEADLINES
17   BRENT NEWMAN, and JEREMY DOBLER,

18                 Defendants.

19

20                          ----oo0oo----

21        Plaintiff Philip Debeaubien ("plaintiff") brought this

22   action under 42 U.S.C. § 1983 against the State of California;

23   the California Highway Patrol; CHP officers Todd Brown, Reggie

24   Whitehead, Ryan Stonebraker, Brent Newman, and Jeremy Dobler

25   (collectively the "CHP defendants"); Joy Graf; and Sabrena Swain;

26   seeking damages on various federal and state law claims.  (See

27   First Amended Complaint (Docket No. 30).)  Defendants now request

28   extensions of several deadlines set forth in the Pretrial Order

                                    1

1   of January 29, 2021.

2           Specifically, (1) the CHP defendants request via ex

3   parte application that the court extend the deadlines for expert

4   and rebuttal expert disclosures by three months each, (see Docket

5   No. 86); (2) Graf and Swain move to extend all remaining pretrial

6   deadlines and the trial date by 2-3 months each, (see Docket No.

7   89); and (3) Graf and Swain request via ex parte application that

8   the court stay the expert and rebuttal expert disclosure

9   deadlines pending a ruling on the first two requests, (see Docket

10  No. 94).[1]

11  I.  Legal Standard

12          Under Federal Rule of Civil Procedure 16(b), "[a]

13  schedule may be modified only for good cause and with the judge's

14  consent."  Fed. R. Civ. P. 16(b)(4).  "Unlike Rule 15(a)'s

15  liberal amendment policy which focuses on the bad faith of the

16  party seeking to interpose an amendment and the prejudice to the

17  opposing party, Rule 16(b)'s 'good cause' standard primarily

18  considers the diligence of the party seeking the amendment."[2]

19  Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir.

20  1992); see also Fed. R. Civ. P. 16, Advisory Committee's Notes

21  (1983 Amendment) (directing courts to consider whether a deadline

22  "cannot reasonably be met despite the diligence of the party

23  _____

24          [1]   Because the court will address all three requests in
    this order, Graf and Swain's ex parte application for a stay of
25  the expert disclosure deadlines pending consideration of the
    first two requests is DENIED AS MOOT.

26
            [2]   Although the CHP defendants style their request as an
27  ex parte application, the court will evaluate it under the Rule
    16 standard, like Graf and Swain's motion, given that it also
28  seeks modification of the scheduling order.

                                2

1    seeking the extension").

2            "If that party was not diligent, the inquiry should

3    end."  Johnson, 975 F.2d at 609.  Judges in this district have

4    further articulated the test to evaluate diligence, under which a

5    movant may establish good cause by showing:

> (1) that it was diligent in assisting the Court in
> creating a workable Rule 16 order; (2) that,
> despite its diligent efforts to comply, its
> noncompliance with a Rule 16 deadline occurred
> because of the development of matters that could
> not have been reasonably foreseen or anticipated;
> and (3) that it was diligent in seeking amendment
> of the Rule 16 order, once it became apparent that
> it could not comply with the order.

11   U.S. E.E.O.C. v. Placer ARC, 2:13-cv-0577 KJM EFB, 2014 WL

12   5419879, at *2 (E.D. Cal. Oct. 23, 2014) (citing Van Scoy v. New

13   Albertson's Inc., 2:08-cv-2237 MCE KJM, 2011 WL 1079914, at *3

14   (E.D. Cal. Mar. 21, 2011); Hood v. Hartford Life & Acc. Ins. Co.,

15   567 F. Supp. 2d 1221, 1224 (E.D. Cal. 2008); Weco Supply Co. v.

16   Sherwin-Williams Co., 1:10-cv-0171 AWI BAM, 2012 WL 1424437, at

17   *3 (E.D. Cal. Apr. 24, 2012)) (alterations adopted).  Although

18   "the focus of the inquiry is upon the moving party's reasons for

19   seeking modification," a court may also consider prejudice to the

20   opposing party in making its determination.  Johnson, 975 F.2d at

21   609.

22           Once a party seeking amendment has shown "good cause,"

23   it must also show that the amendment is proper under Rule 15.

24   See id. at 608 (citations omitted).  Under that rule, "[t]he

25   court should freely give leave [to amend] when justice so

26   requires."  Fed. R. Civ. P. 15(a)(2).  However, leave should not

27   be granted under Rule 15 if amendment (1) would cause prejudice

28   to the opposing party, (2) is sought in bad faith, (3) creates

1　undue delay, or (4) is futile.  <u>Chudacoff v. Univ. Med. Ctr. of</u>

2　<u>S. Nev.</u>, 649 F.3d 1143, 1153 (9th Cir. 2011) (citing <u>Foman v.</u>

3　<u>Davis</u>, 371 U.S. 178, 182 (1962)).  "Because Rule 16(b)'s 'good

4　cause' inquiry essentially incorporates the first three factors,

5　if a court finds that good cause exists, it should then deny a

6　motion for leave to amend only if such amendment would be

7　futile."  <u>J & J Sports Prods., Inc. v. Maravilla</u>, 2:12-cv-02899

8　WBS EFB, 2013 WL 4780764, at *1 (E.D. Cal. Sept. 5, 2013).

9　II.  <u>Analysis</u>

10　　　　　All defendants seek extensions of the expert disclosure

11　deadlines.  (<u>See generally</u> CHP Ex Parte App. to Extend Exp.

12　Discl. Dates ("CHP App.") (Docket No. 86); Mot. to Amend Sched.

13　Order ("Mot.") (Docket No. 89).)  They argue that additional time

14　is necessary so that they may submit complete expert disclosures,

15　including one by a physician following an independent medical

16　examination of plaintiff pursuant to Rule 35, and one by an

17　expert economist to evaluate plaintiff's damages.  (<u>See</u> CHP App.

18　at 2-3 (Docket No. 86); Mot. at 5-6 (Docket No. 89); Opp. to CHP

19　App. at 3-4 (Docket No. 88); Opp. to Mot. at 11-13 (Docket No.

20　98).)  Defendants Graf and Swain also seek extension of the

21　remaining deadlines so that they may reopen plaintiff's

22　deposition to address issues relating to his allegations against

23　them and subpoena records from him relating to damages.  (<u>See</u>

24　Mot. at 5 (Docket No. 89).)  Although the CHP defendants have not

25　requested an extension of the remaining deadlines, they also note

26　their desire to depose plaintiff regarding damages.  (<u>See</u> CHP

27　App. at 2 (Docket No. 86).

28　　　　　In seeking extension of the expert disclosure

4

deadlines, Graf and Swain cite plaintiff's counsel's failure to respond to their requests that plaintiff voluntarily dismiss Graf from the case, based on their belief that July 30 and August 11, 2021 depositions showed no evidence of liability as to Graf. (See Defs.' Reply at 4 (Docket No. 100); Song Suppl. Decl. at ¶¶ 5-6 (Docket No. 100-1).)  Although they make no such argument as to Swain, they refer to their delay in retaining an expert for both defendants as "[c]ounsel's defense strategy, based on the lack of evidence against their respective clients." (Defs.' Reply at 10 (Docket No. 100).)

In other words, defendants acknowledge that their delay was a strategic choice based on their hope that plaintiff would voluntarily dismiss Graf -- obviating the need to retain an expert on her behalf -- which they contend does not evince a lack of diligence. (See id. at 4.)  They do so notwithstanding their concession that they did not retain their expert until after plaintiff's counsel did not respond to their requests. (See id.)[3]

They also contend that they were delayed in providing a transcript of Swain's July 30, 2021 deposition to their expert, in turn preventing the expert from timely providing a report, because they did not receive the transcript from plaintiff's

---

[3]    Graf and Swain note that their expert had a pre-scheduled two-week vacation in early September, which they contend further prevented them from obtaining an expert opinion in time for the September 10 deadline. (See Defs.' Reply at 4 (Docket No. 100).)  They add that, following that vacation, she completed her reports on September 29 and 30, 2021, but acknowledge that counsel did not produce the rebuttal report before the October 1 deadline. (See id.)

1   counsel until August 27, 2021.  (<u>See</u> Swain Ex Parte App. to Stay

2   Exp. Discl. Deadlines at 5 ("Swain App.") (Docket No. 94);

3   Leonard Decl. at ¶ 8 (Docket No. 94-1).)[4]  They contend that the

4   delayed report was also partly a result of plaintiff's counsel

5   not requesting Graf's deposition until June 27, 2021.  (See

6   Defs.' Reply at 5 (Docket No. 100).)  However, as they

7   acknowledged during oral argument, in response to that request,

8   counsel for Graf offered August 11 and 18 as the earliest dates

9   for the deposition -- more than one month later, and less than

10  one month before the September 10 expert disclosure deadline.

11       All defendants point to extensive discovery requests

12  propounded by plaintiff as further justification for seeking

13  extension of pretrial deadlines.  In essence, they argue that for

14  much of the past several months, they have been so consumed with

15  responding to those requests and participating in depositions

16  plaintiff had requested that they were left with insufficient

17  time to engage in their own end of the discovery process,

18  including timely submitting their expert disclosures.  (<u>See</u> CHP

19  App. at 2-4 (Docket No. 86); Mot. at 4-6 (Docket No. 89).)

20       All defendants further contend that the COVID-19

21       ─────────────────
         [4]    It is unclear to the court why Graf and Swain could not
22  have simply ordered a transcript from the deposition reporter,
    and they do not assert that they were unable to do so.

23       Graf and Swain submitted expert disclosures on
    September 10, disclosing one expert witness, Dr. Sarah Polfliet,
24  though they and their counsel acknowledge that neither disclosure
    included an expert report.  (<u>See</u> Swain App. at 3 (Docket No. 94);
25  Leonard Decl. at ¶¶ 24-25 (Docket No. 94-1).)  In a September 14
    email to plaintiff's counsel, counsel for Graf expressed her
26  belief that no expert report was required, (<u>see</u> Katz Decl., Ex. K
    (Docket No. 98-1)), notwithstanding Federal Rule of Civil
27  Procedure 26(a)(2)(B), though she subsequently requested
    additional time to provide one, (<u>see</u> <u>id.</u>, Ex. G).
28

1   pandemic, along with consequent emergency stay-at-home orders,

2   have also frustrated their ability to engage in discovery and

3   meet the scheduling order's deadlines, though they provide little

4   detail on this point.  (See CHP App. at 2 (stating that stay-at-

5   home orders "have . . . slowed down counsel from completing the

6   non-expert discovery needed, including taking the second session

7   of Plaintiff's deposition") (Docket No. 86); Mot. at 6 (stating

8   that the pandemic has "cannibaliz[ed] valuable time needed to

9   conduct discovery and to prepare the case for trial," and that

10  "[t]he parties had . . . anticipated that the pandemic would wane

11  such that Plaintiff's deposition . . . could be conducted in

12  person" (Docket No. 89).)

13       Finally, the CHP defendants contend that they need

14  extra time to submit their expert disclosures because they have

15  had new counsel as of mid-July, who states that he "ha[s] major

16  cases demanding [his] attention, including cases dealing with

17  water delivery and the Santa Ana Pipeline," and that consequently

18  "[i]t has taken time to get up to speed on this case."  (See CHP

19  App. at 2, Helfat Decl. at ¶¶ 3-4 (Docket No. 86).)[5]

20       These explanations wholly fail to demonstrate the

21  diligence required to justify the amendments to the scheduling

22  order sought by defendants.  That Graf and Swain hoped plaintiff

23  would voluntarily dismiss Graf from the case, and on this basis

24  delayed their decision to retain an expert until it was too late

25  for her to timely provide the required report -- in part because,

26

27       [5]   The CHP defendants are represented by the California
    Attorney General's office, where both their current and previous
28  counsel serve as Deputy Attorneys General.  (See Docket No. 83.)

7

1  it appears, they did not learn she would be going on vacation
2  until they retained her in August -- simply represents a gambit
3  to avoid having to retain an expert for Graf.  That this fails to
4  show diligence is evidenced by the fact that, even if their
5  effort had proved successful, Swain's need for an expert would
6  not have changed, as they only sought dismissal of Graf.  Thus,
7  their strategy cannot explain the delay as to Swain.  See
8  Johnson, 975 F.2d at 609 (modification of scheduling order's
9  deadlines appropriate "if [the deadlines] cannot reasonably be
10 met despite the diligence of the party seeking the extension")
11 (citation omitted).

12         Further, when asked in June to schedule a deposition of
13 Graf, her counsel offered August 11 as the earliest possible
14 date.  At oral argument, Graf's counsel stated that this was
15 because neither she nor Graf had any room in their schedules in
16 July.  Even if true, and if -- as Graf contends -- the expert
17 needed Graf's deposition transcript before she could prepare her
18 report, counsel should have known to retain an expert early
19 enough to enable her to timely complete the report following the
20 deposition.[6]  That the expert Graf and Swain chose to retain
21 happened to have a pre-scheduled vacation during that period did
22 not excuse their obligations to meet that deadline.  Nor did it
23 excuse them from, at the very least, notifying the court as soon
24 as it became clear that they would be unable to do so -- not
25 weeks later, on the date expert disclosures were due, as Graf and
26 Swain have done here.  (See Mot. (Docket No. 89); Placer ARC,

27 _____
28         [6]   Unlike Swain, Graf has not asserted that she was unable
   to timely obtain a transcript of her August 11 deposition.

8

1  2014 WL 5419879, at *3 (parties seeking modification of

2  scheduling order must "timely object[ ] to an order with which

3  [they] took issue").)

4        Defendants' remaining arguments are even less

5  persuasive.  While it may be that plaintiff has sought extensive

6  discovery in this case, this does not excuse defendants from

7  fulfilling their own obligations under the scheduling order, of

8  which they have been aware since January.  They provide little

9  explanation for their failure to seek their desired discovery by

10  now.  Moreover, their claims that they had no time to do so for

11  the better part of a year are belied by the significant effort

12  they appear to have put into opposing plaintiff's discovery

13  requests, as noted in Magistrate Judge Barnes's recent -- and

14  sixth -- order granting plaintiff's motion to compel discovery.

15  (See Docket No. 109.)

16        In that order, Judge Barnes specifically observed that

17  "this is not the first[ ]time defendants' conduct has been found

18  wanting," noting that she previously issued monetary sanctions

19  "in light of defendants' repeated obstruction of discovery," and

20  stated that she "remain[ed] concerned about defendants' apparent

21  habit of unnecessary delay and waste of resources."  (Id. at 2;

22  see also Docket Nos. 23 (granting prior motion by plaintiff to

23  compel discovery), 46 (same), 70 (same), 72 (same), 82 (same,

24  awarding monetary sanctions "in light of defendants['] repeated

25  obstruction of discovery" and other issues, and cautioning "that,

26  at some point, the undersigned may find monetary sanctions

27  insufficient to correct defendants' behavior and look to more

28  extreme sanctions").)

1    The pattern of conduct Judge Barnes describes is

2    inconsistent with the good cause defendants are required to show

3    in seeking modification of the scheduling order.  It also

4    suggests that defendants assumed they could focus their efforts

5    on challenging plaintiff's discovery requests and nevertheless

6    receive additional time to meet their own deadlines.  However, as

7    the Ninth Circuit stated in Johnson:

8         A scheduling order is not a frivolous piece of
          paper, idly entered, which can be cavalierly
9         disregarded by counsel without peril.  [A]
          district court's decision to honor the terms of
10        its binding scheduling order does not simply exalt
          procedural technicalities over the merits of [the
11        moving party's] case.  Disregard of the order
          would undermine the court's ability to control its
12        docket, disrupt the agreed-upon course of the
          litigation, and reward the indolent and the
13        cavalier.

14   975 F.2d at 610 (quotation marks and citations omitted).  As

15   such, the court is unwilling to reward parties' dilatory tactics

16   by amending it whenever those tactics prove unsuccessful.

17        Nor do defendants' vague and generalized references to

18   the COVID-19 pandemic excuse their lack of diligence.  The court

19   does not by any means deny the seriousness of the pandemic.

20   However, as another California district court aptly stated under

21   similar circumstances:

22        [H]ere, Plaintiff simply says the word "COVID-19"
          as if it, in and of itself, is justification to
23        excuse delays and dereliction without providing
          any support.  For example, was Plaintiff's expert
24        herself affected by the virus, or someone she
          cares for?  Did COVID-19 prevent the expert from
25        accessing important information she needed?
          Apparently, none of these things or more occurred
26        because if they had, Plaintiff most assuredly
          would have included these challenges in her
27        papers.

28   Martinez v. Costco Wholesale Corp., 336 F.R.D. 183, 188 (S.D.

10

Cal. 2020).  Here, defendants have similarly failed to explain how the pandemic has prevented them from meeting the scheduling order's deadlines, which is noteworthy considering that it clearly has not prevented them from obstructing plaintiff's discovery efforts.  Accordingly, this attempt to justify their delay likewise fails to show good cause to amend the order.

Finally, the CHP defendants' current counsel has been assigned to this case since mid-July, which should have been adequate time to complete any efforts begun by their prior counsel to timely retain necessary experts and produce their reports.[7]  Moreover, it is the Attorney General himself who represents the CHP defendants in this case.  And it is his responsibility to assign attorneys in his office who are able to adequately represent state defendants and meet the deadlines previously set by the court.  It is no excuse that here the Attorney General decided to replace the lead attorney with one who lacked sufficient time to comply with the existing scheduling order.  CHP defendants' counsel's asserted lack of time to work on this case thus fails to constitute good cause to amend the order.

Two additional factors further demonstrate the absence of good cause under these circumstances.  First, as noted above,

---

[7]     Further, as current counsel for the CHP defendants acknowledged at oral argument, he had been included in communications relating to this case since before he formally joined the case in July, and thus would have been apprised of any need for experts even sooner.  (See also Katz Decl. at ¶ 23 (attesting that counsel for plaintiff was advised on or soon after June 6 that current counsel for CHP defendants would be assuming the role of lead counsel in their defense).)

whether a party "was diligent in seeking amendment of the [scheduling] order, once it became apparent that it could not comply with the order," can help demonstrate good cause to amend. See Placer ARC, 2014 WL 5419879, at *2.  Here, the parties have been aware of the September 10 and October 1 expert disclosure deadlines since January.  (See Docket No. 38.)  No defendant contends that plaintiff's claims against them were of such a nature that they could not have foreseen the need to retain one or more experts.  Accordingly, the CHP defendants' delay until September 8, 2021 (two days before the initial expert disclosure deadline) and Graf and Swain's delay until September 10 (the day of the deadline) to request extensions demonstrates a lack of diligence in seeking amendment.  Cf. Martinez, 336 F.R.D. at 187 (granting motion to strike late-submitted expert disclosures where submitting party "had nearly eleven months to prepare and submit timely expert reports . . . .  [y]et[,] even with ample time, . . . waited until four days before the expert disclosure was due to ask for an extension").

        Second, it appears that defendants have taken very few steps to pursue their own discovery thus far.  As plaintiff points out, and as defendants have not disputed, defendants have yet to either schedule another session in which to depose plaintiff or take action to obtain an independent medical examination of him -- some of the discovery for which now they claim to need additional time -- (see Opp. to Mot. at 10-13 (Docket No. 98)), despite having had months to do so before now. For all of the foregoing reasons, the court concludes that defendants have not shown the requisite diligence in seeking

1    amendment of the scheduling order.

2           Although ordinarily if the court concludes that "th[e]
3    party [seeking amendment] was not diligent, the inquiry should
4    end," "the existence or degree of prejudice to the party opposing
5    the modification might supply additional reasons to deny a
6    motion." See Johnson, 975 F.2d at 609.  Here, granting the
7    relief sought by defendants would result in unfair prejudice to
8    plaintiff.  Plaintiff, who opposes defendants' requests, has
9    timely submitted his expert disclosures, notifying defendants of
10   seven experts upon whom he may rely and providing an expert
11   report from each.  (See Opp. to Mot. at 21 (Docket No. 98); Katz
12   Decl., Ex. C (Docket No. 98-1).)  If the court were to grant
13   defendants additional time to prepare and submit theirs,
14   defendants would receive an unfair tactical advantage by having
15   additional time and materials to have their expert witness
16   reports prepared.  For this reason as well, the court concludes
17   that defendants lack good cause to receive an extension.[8]

18          IT IS THEREFORE ORDERED that that the CHP defendants'
19   ex parte application to extend the expert disclosure deadlines,
20   as well as Graf and Swain's motion to amend the scheduling order,
21   be, and the same hereby are, DENIED.[9]
22   ///

23
24          [8]    Because the court does not find good cause to grant
     defendants' requested amendments to the scheduling order, the
25   court does not reach the issue of whether Rule 15's requirements
     are satisfied.

26
27          [9]    If the court's denial of defendants' requests puts them
     at a disadvantage, it is a consequence, which should have been
     anticipated, of their attorneys' lack of diligence and failure to
28   comply with the court's orders.  See Johnson, 975 F.2d at 610.

Dated:   October 22, 2021

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE